**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SWISS RE CORPORATE SOLUTIONS AMERICA INSURANCE CORPORATION, *Plaintiff*, <br><br> v. <br><br> QUALITY COMPANIES INC. QUALITY STAIR & RAIL LLC; QSR PROPERTIES LLC; GLENN C. SALAMONE; DAVID D. RUSCONI *Defendants*. | No. 3:24-cv-01086-(VAB) |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

In this insurance and indemnity action, Swiss Re Corporate Solutions America Insurance Corporation ("Swiss Re" or "Plaintiff") alleges that Quality Companies, Inc., Quality Stair & Rail LLC, QSR Properties LLC, Glenn Salamone, and David Rusconi (collectively, "Defendants") breached the parties' General Indemnity Agreement by failing to indemnify Swiss Re for losses, costs, and expenses incurred in connection with bonds issued on behalf of QSR Steel Corporation LLC. Swiss Re now moves for summary judgment and seeks entry of judgment for $247,319.69, plus prejudgment and postjudgment interest. Pl.'s Mem. in Supp., ECF No. 44 ("Pl.'s Mem.").

For the reasons that follow, Swiss Re's motion for summary judgment, ECF No. 43, is **GRANTED** in part and **DENIED** in part.

The motion is **GRANTED** as to liability under Counts One and Two and **DENIED** as to damages in the principal amount of $247,319.69, as well as to prejudgment and postjudgment interest on any such damages.

1

In light of the pending motion for entry of default – one if granted, will result in a motion for default judgment – SwissRe is ordered to submit supplemental briefing by **May 1, 2026**, on how the currently disputed issues of damages and prejudgment and postjudgment interest should be resolved in the event that the Defendants no longer defend against this case.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual Allegations

This action arises from a Connecticut Department of Transportation project on which Nosal Builders, Inc. subcontracted certain work to QSR Steel Corporation LLC, and Swiss Re thereafter issued performance and payment bonds for QSR Steel's work. Swiss Re's L.R. 56(a)(1) Stmt. ¶¶ 1–3, ECF No. 45, at 1–2; Defs.' L.R. 56(a)(2) Stmt. ¶¶ 1–3, ECF No. 48, at 1–2.

As a condition of issuing those bonds, Swiss Re required Quality Companies, Inc., Quality Stair & Rail LLC, QSR Properties LLC, Glenn C. Salamone, and David D. Rusconi to execute a General Indemnity Agreement. Swiss Re's L.R. 56(a)(1) Stmt. ¶ 4, ECF No. 45, at 2; Defs.' L.R. 56(a)(2) Stmt. ¶ 4, ECF No. 48, at 2.

In July 2020, Swiss Re received a claim from Nosal against the performance bond and also received payment-bond claims from QSR Steel's subcontractors, vendors, and suppliers. Swiss Re's L.R. 56(a)(1) Stmt. ¶¶ 8–9, ECF No. 45, at 4; Defs.' L.R. 56(a)(2) Stmt. ¶¶ 8–9, ECF No. 48, at 4–5.

Swiss Re then entered into a Takeover Agreement with Nosal under a full reservation of rights, using QSR Steel as the completion contractor, and later entered into a Completion and Indemnity Reaffirmation Agreement with QSR Steel, under which QSR Steel reaffirmed its

obligations under the General Indemnity Agreement, agreed to perform the remaining scope of work, and acknowledged its approval of the Takeover Agreement. Swiss Re's L.R. 56(a)(1) Stmt. ¶¶ 10–16, ECF No. 45, at 4–5; Defs.' L.R. 56(a)(2) Stmt. ¶¶ 10–16, ECF No. 48, at 5–7.

The parties agree that Defendants satisfied the $201,975.12 judgment entered in the prior indemnity action. They dispute, however, whether additional amounts remain due. Swiss Re asserts that it later incurred additional losses, legal costs, consultant fees, and expenses, while Defendants assert that all non-fee amounts have been paid and that the remaining dispute concerns only attorney's fees. Swiss Re's L.R. 56(a)(1) Stmt. ¶¶ 20–22, ECF No. 45, at 6; Defs.' L.R. 56(a)(2) Stmt. ¶¶ 20–22, ECF No. 48, at 8–9; Defs.' Additional Material Facts ¶¶ 16–17, ECF No. 48, at 13.

### B. Procedural History

On June 21, 2024, SwissRe Corporate Solutions America Insurance Corporation filed the Complaint against Quality Companies, Inc., Quality Stair & Rail LLC, QSR Properties LLC, Glenn C. Salamone, and David D. Rusconi. Compl., ECF No. 1.

On March 10, 2025, Quality Companies, Inc., Quality Stair & Rail LLC, QSR Properties LLC, Glenn C. Salamone, and David Rusconi filed an Answer with Special Defenses. Answer, ECF No. 34.

On August 13, 2025, the Court entered a scheduling order setting August 15, 2025 as the dispositive-motion deadline. Scheduling Order, ECF No. 41.

On August 14, 2025, Swiss Re moved for summary judgment and filed a memorandum in support, a Local Rule 56(a)(1) statement, and the affidavit of Douglas Colville with exhibits. Mot. for Summ. J., ECF No. 43; Pl.'s Mem. in Supp., ECF No. 44; Swiss Re's L.R. 56(a)(1) Stmt., ECF No. 45; Colville Aff., ECF No. 46.

On September 3, 2025, Quality Companies, Inc., Quality Stair & Rail LLC, QSR Properties LLC, Glenn C. Salamone, and David Rusconi filed a memorandum in opposition, a Local Rule 56(a)(2) statement with additional material facts and exhibits, and the affidavit of Glenn Salamone with exhibits. Defs.' Mem. in Opp'n, ECF No. 47; Defs.' L.R. 56(a)(2) Stmt., ECF No. 48; Salamone Aff., ECF No. 49.

On October 17, 2025, Swiss Re filed its reply in support of summary judgment. Pl.'s Reply, ECF No. 52.

On December 24, 2025, the Court granted defense counsel's motion to withdraw and stayed the case until February 6, 2026, by which time Defendants were required to engage successor counsel or otherwise advise the Court how they intended to proceed in defending this case. Order, ECF No. 54.

On February 11, 2026, Swiss Re filed a motion for default entry against Quality Companies, Inc., Quality Stair & Rail LLC, QSR Properties LLC, Glenn Salamone, and David Rusconi. Mot. for Default Entry, ECF No. 55.

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

4

demonstrate the absence of a genuine issue of material fact."). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967) and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343, 347 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

As an initial matter, this Discussion resolves only those issues actually presented and developed in the parties' summary judgment papers. *See* Pl.'s Mem. in Supp., ECF No. 44, at 1, 17-18 (seeking summary judgment "with respect to all defendants" and requesting judgment "in the amount of $247,319.69, plus interest in the amount of $51,004.04"); Defs.' Mem. in Opp'n, ECF No. 47, at 1-2 (stating that Defendants "concede that summary judgment is appropriate as to liability" but "vigorously dispute the Surety's entitlement to damages in the amount sought" because the claim "is comprised entirely of attorneys' fees and interest thereon"); Pl.'s Reply, ECF No. 52, at 2, 5 (arguing that Defendants "concede that summary judgment is appropriate as to liability" and that Swiss Re "should be awarded summary judgment in the amount sought").

The Court thus will address Swiss Re's request for summary judgment as to liability under Counts One and Two, the amount of damages sought, and prejudgment and postjudgment interest. The Court does not separately address Count Three because this claim has not been fully addressed.

**A. Liability**

When a party seeks to enforce an indemnity agreement, courts apply Connecticut's "well established principles of contract interpretation.[1]" *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 838 A.2d 135, 144 (2004). The contract "must be construed to effectuate the intent of the parties," and "[w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Id.* at 145. And "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Id.*; *see also Tallmadge Bros. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 502 (2000) (stating that, "when the parties have deliberately put their engagements into writing," it is "conclusively presumed" that "the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing").

Swiss Re argues that the General Indemnity Agreement's "express terms" require the Indemnitors "to reimburse the Surety for all losses and costs, including but not limited to attorneys' fees and consultants' fees, interest and expenses incurred by the Surety." Pl.'s Mem. in Supp., ECF No. 44, at 1.

Swiss Re further relies on the record evidence that the Indemnitors executed the General Indemnity Agreement, that the Surety entered the Takeover Agreement "under a full reservation

---

[1] As noted further below, the Court will apply the substantive law of Connecticut as to these claims.

of rights," that QSR Steel later "reaffirmed its obligations under the GIA," and that the Surety "has incurred and paid for losses, costs, and expenses in connection [with] the Bonds in an amount not less than $247,319.69." Colville Aff., ECF No. 46 ¶¶ 6, 8, 10, 16 (stating that QSR Steel and the other Defendants "entered into a General Agreement of Indemnity ('GIA') with NAS"; stating that NAS "entered into a Takeover Agreement with Nosal" and did so "under a full reservation of rights"; stating that QSR Steel "reaffirmed its obligations under the GIA"; and stating that NAS "has incurred and paid for losses, costs, and expenses in connection [with] the Bonds in an amount not less than $247,319.69"). Takeover Agreement, Ex. C to Colville Aff., ECF No. 46-3, at 2 (stating that "under a full reservation of rights, NAS will, in accordance with the Performance Bond undertake to perform and complete the Subcontract"); Swiss Re's L.R. 56(a)(1) Stmt., ECF No. 45 ¶¶ 4, 10, 15, 22 (stating the Indemnitors "entered into a General Indemnity Agreement ('GIA') with NAS"; stating the Surety "agreed under a full reservation of rights to complete QSR Steel's scope of work"; stating QSR Steel "reaffirmed its obligations under the GIA"; and stating the Surety incurred "not less than $247,319.69").

The Defendants, however, expressly "concede that summary judgment is appropriate as to liability," while disputing only "damages in the amount sought." Defs.' Mem. in Opp'n, ECF No. 47, at 1. Defs.' L.R. 56(a)(2) Stmt., ECF No. 48 ¶¶ 4, 6–7 (admitting the Indemnitors "entered into a General Indemnity Agreement ('GIA') with NAS"; admitting the quoted indemnity language in GIA paragraph 2; and admitting the quoted "exclusive right," "no obligation to tender," and "prima facie evidence" language in GIA paragraph 8).

The Court agrees.

There is no genuine dispute of material fact as to liability under Counts One and Two. *See Anderson*, 477 U.S. at 247-48 (stating that "the mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact"); *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (stating that "[m]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law").

Under the General Indemnity Agreement, "[t]he Indemnitors will exonerate, hold harmless and indemnify the Surety from and against any and all liability, loss, costs, damages, fees of attorneys and consultants, and other expenses, including interest," and "[t]he Surety shall have no obligation to tender its defense to any Indemnitor." GIA, ECF No. 1-1 ¶¶ 2, 8; Swiss Re's L.R. 56(a)(1) Stmt., ECF No. 45 ¶¶ 6-7 (quoting the same language); Defs.' L.R. 56(a)(2) Stmt., ECF No. 48 ¶¶ 6-7 (admitting the same quoted provisions).

The agreement further provides that, if the Surety elects not to tender its defense, "the Indemnitors shall nevertheless remain liable to the Surety for any and all loss, costs, damages, interest, expenses, including but not limited to attorneys' fees and consulting fees resulting from the Surety's investigation and/or defense," and that "[a]n itemized statement of payments made by the Surety . . . shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety for such payments, with interest." GIA, ECF No. 1-1 ¶ 8; Swiss Re's L.R. 56(a)(1) Stmt., ECF No. 45 ¶ 7 (quoting the same language); Defs.' L.R. 56(a)(2) Stmt., ECF No. 48 ¶ 7 (admitting the same language). Those "clear and unambiguous" provisions are given effect according to their terms. *PSE Consulting*, 267 Conn. at 145 (stating that "[w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms"); *Tallmadge Bros.*, 252 Conn. at 502 (stating that "the whole engagement of the parties" is presumed to have been reduced to writing).

And the record evidence reinforces that conclusion. After Nosal made a claim on the Performance Bond, the Surety entered into a Takeover Agreement "under a full reservation of rights," QSR Steel "approved" the Surety's execution of that agreement, and QSR Steel later executed a Completion and Indemnity Reaffirmation Agreement under which it "reaffirmed its obligations under the GIA." Colville Aff., ECF No. 46 ¶¶ 8–10; Takeover Agreement, Ex. C to Colville Aff., ECF No. 46-3, at 2, 5 (stating that "under a full reservation of rights, NAS will . . . undertake to perform and complete the Subcontract" and that "NBI will pay over to the Surety the amount of $193,125"); Completion & Indem. Reaffirmation Agreement, Ex. D to Colville Aff., ECF No. 46-4, at 1–2 (stating that "QSR has approved the Takeover Agreement and has no objection to NAS proceeding as described in the Takeover Agreement" and that QSR "will reaffirm all of its duties and obligations to NAS under the GAI"); Defs.' L.R. 56(a)(2) Stmt., ECF No. 48 ¶¶ 10–16.

The Defendants also admit that the Surety notified them of its alleged losses through December 14, 2020, and that they refused to indemnify, at least for what they characterize, as "the unreasonable and excessive attorney's fees allegedly incurred by the Surety." Defs.' L.R. 56(a)(2) Stmt., ECF No. 48 ¶¶ 17-18 (admitting that the Surety notified the Indemnitors "through December 14, 2020" and admitting Defendants refused to indemnify "for the unreasonable and excessive attorney's fees allegedly incurred by the Surety").

On this record – at least, as to liability – there is "specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015). Even though the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017), this record leaves no

genuine factual dispute as to finding liability in Swiss Re's favor. *Anderson*, 477 U.S. at 250 (stating that summary judgment is appropriate "if, under the governing law, there can be but one reasonable conclusion as to the verdict"). That record, together with Defendants' express concession in their memorandum in opposition, requires finding liability for Swiss Re under Counts One and Two.

Accordingly, Swiss Re's motion for summary judgment as to liability under Counts One and Two liability is established.

### B. Damages

As the amount recoverable under the General Indemnity Agreement turns on the scope of the parties' contractual undertaking, Connecticut substantive law also applies in order to determine whether Swiss Re may recover attorney's fees and related amounts under the agreement. *Sendroff v. Food Mart of Connecticut, Inc.*, 34 Conn. Supp. 624, 626, 381 A.2d 565 (1977) (stating that "unless the indemnity contract provides otherwise, an indemnitee is entitled to recover reasonable attorney's fees as part of his damages"); *Burr v. Lichtenheim*, 190 Conn. 351, 363, 460 A.2d 1290 (1983) (stating that "in the absence of express contractual terms to the contrary, allowance of fees is limited to the defense of the claim which was indemnified and does not extend to services rendered in establishing the right to indemnification"); *Republic Ins. Co. v. Pat DiNardo Auto Sales, Inc.*, 44 Conn. Supp. 207, 222, 678 A.2d 516 (Super. Ct. 1995) (stating that, where the agreement expressly so provided, the surety was "entitled to compensation for the attorney's fees it incurred in defending the action brought by the town and in prosecuting this action").

But "[u]nder the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (stating that); *Hanna v. Plumer*, 380 U.S. 460, 471 (1965) (stating that "[w]hen a situation is

11

covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie choice: the court has been instructed to apply the Federal Rule."). As a result, federal law – more specifically, in this context, Rule 56 of the Federal Rules of Civil Procedure – governs whether Swiss Re's present evidentiary showing is sufficient to establish the amount of those damages as a matter of law on summary judgment. *See Anderson*, 477 U.S. at 247-48 (1986) (stating that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact"); *Celotex Corp.*, 477 U.S. at 323 (stating that a party seeking summary judgment bears "the initial responsibility of informing the district court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact").

Under Connecticut law, "unless the indemnity contract provides otherwise, an indemnitee is entitled to recover reasonable attorney's fees as part of his damages." *Sendroff*, 381 A.2d at 566 (citation omitted). The amount "is limited to fees incurred in defense of the claim indemnified and would not include services rendered in establishing the right of indemnity," *id.* (citation omitted), and "include such reasonable expenses as are incurred in attempting to avoid liability or in minimizing the amount that must be paid, including expenses incurred in contesting the action brought by the original claimant." *Id.* at 627 (citation omitted). As one court, although not a Connecticut one, put it, "an indemnity agreement is not a blank check; it does not entitle the surety company to reimbursement for legal expenses which are unreasonable or unnecessary." *Jackson v. Hollowell*, 685 F.2d 961, 966 (5th Cir. 1982).

Swiss Re argues that the GIA entitles it to recover all losses, fees, and expenses it incurred in connection with the Bonds, including the amounts reflected in the Colville Affidavit

and Exhibit F; that the Surety "has incurred and paid for losses, costs, and expenses in connection [with] the Bonds in an amount not less than $247,319.69"; and that the "partially redacted invoices provide more than sufficient information to assess whether the billings are excessive or duplicative." Colville Aff., ECF No. 46 ¶ 16; Swiss Re's L.R. 56(a)(1) Stmt., ECF No. 45 ¶ 22; Pl.'s Reply, ECF No. 52, at 2, 7–10.

The Defendants respond that "the Surety's claim is comprised entirely of attorneys' fees and interest thereon," that "one hundred percent of the Surety's claimed damages- all $247,319.69—is for attorneys' fees," and that Swiss Re has not provided "unredacted copies of the Surety's legal bills." Defs.' Mem. in Opp'n, ECF No. 47, at 1, 15–16, 19; Defs.' L.R. 56(a)(2) Stmt., ECF No. 48 ¶¶ 21–22; Salamone Aff., ECF No. 49 ¶¶ 27–31 (stating that the invoices "were extensively redacted," that the Surety had not provided "unredacted copies of the Surety's legal bills," that the bills show "many examples of unnecessary and unreasonable billing," and that Swiss Re's fees "total $337,659.02" while Defendants' are "less than half").

The Defendants also rely on the prior indemnity action, where, they say, the court "refused to award the Surety the amount it sought in attorney's fees," cited "duplicative and excessive billing by the Plaintiffs" which "portray a significant lack of exercise of billing discretion," and "reduced the Surety's attorney's fees by 20%." Defs.' L.R. 56(a)(2) Stmt., ECF No. 48 ¶¶ 11–15.

The Court agrees.

Even after Swiss Re's evidentiary showing, there is a genuine issue of material fact as to the amount of damages recoverable on this record. There is record evidence that NAS incurred additional "legal costs, fees, and expenses" after satisfaction of the prior judgment and that its internal ledger reflects numerous "Allocated Loss Adjustment Expense" entries and a bottom-

line figure of $264,312.89. Colville Aff., ECF No. 46 ¶¶ 14–16; List of Surety Payments, Ex. F to Colville Aff., ECF No. 46-6, at 2; Pl.'s Mem. in Supp., ECF No. 44, at 7 n.3.

But "the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 248 (emphasis in original). Defendants have created a genuine dispute as to material facts relating to what Swiss Re's figures represent and whether the underlying fees are reasonable and necessary. Defs.' L.R. 56(a)(2) Stmt., ECF No. 48 ¶¶ 21–22 (stating that "[t]he Indemnitors have paid the Surety for all losses, consultant fees and expenses" and denying that the $247,319.69 was for any "loss, cost or expense" other than legal fees, and further denying that such legal fees are "reasonable or necessary"); Defs.' Mem. in Opp'n, ECF No. 47, at 15–19 (stating that "the principal amount of the Surety's claim is comprised entirely of attorneys' fees," that the Surety "is solely seeking reimbursement for its payment of attorneys' fees," and that the Surety "has not demonstrated that such legal services were necessary, and has not shown that the amount of the invoices is reasonable"); see also Defs.' L.R. 56(a)(2) Stmt., ECF No. 48 ¶¶ 18–22, 32–34; Salamone Aff., ECF No. 49 ¶¶ 26–28.

While Swiss Re disputes the Defendants' assertions, all reasonable inferences must be drawn in the Defendants' favor. *Dufort*, 874 F.3d at 347 (requiring the court to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought"). That dueling claims on damages thus cannot be resolved at this stage of the case. *Anderson*, 477 U.S. at 251-52 ("[T]he inquiry . . . is . . . whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").

The same is true as to the potential credit issues. On this record, Swiss Re arguably filed a proof of claim in QSR Steel's bankruptcy "for the same legal fees sought by the Surety from

the Indemnitors in the instant case," that the confirmed plan requires QSR Steel to pay Swiss Re "$23,378.37 over 4.5 years," and that QSR Steel "has already paid $1,558.56." Defs.' L.R. 56(a)(2) Stmt., ECF No. 48 ¶¶ 27–31; Salamone Aff., ECF No. 49 ¶¶ 21–25; Proof of Claim, Ex. A to Salamone Aff., ECF No. 49-1, at 2. While Swiss Re responds that it "is not seeking double recovery" and that it "will of course reduce its claim," Pl.'s Reply, ECF No. 52, at 9–10, that response confirms that the amount of any present judgment remains unsettled on the current record.

Accordingly, the Court denies Swiss Re's motion for summary judgment to the extent it seeks entry of judgment in the principal amount of $247,319.69.

## C. Prejudgment and Postjudgment Interest

Because prejudgment interest on this Connecticut-law contract claim is part of the substantive damages analysis, Connecticut law applies. *Deutsche Bank AG v. Sebastian Holdings, Inc.*, 236 Conn. App. 330, 347 A.3d 970 (2025) (stating that General Statutes § 37-3a "requires an analysis of the merits of the underlying claim" and that interest awarded under § 37-3a "constitutes an element of the damages awarded"); *Foley v. Huntington Co.*, 42 Conn. App. 712, 739-40, 682 A.2d 1026 (1996) (stating that § 37-3a "provides a substantive right" and "applies to claims involving the wrongful detention of money after it becomes due and payable").

By contrast, postjudgment interest concerns the effect of a federal judgment once entered, and federal law therefore governs that issue. *FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 147 (2d Cir. 2010) (stating that "the federal post-judgment interest rate provided for in 28 U.S.C. § 1961 applies in diversity cases"); *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 112-15 (2d Cir. 2013) (holding that federal district courts "must apply the federal rate of post-judgment interest

to judgments rendered in diversity actions" and explaining that, "[u]nlike pre-judgment interest, post-judgment interest is not awarded to make a plaintiff whole for his injury").

Under Conn. Gen. Stat. § 37-3a, interest "may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." Conn. Gen. Stat. § 37-3a(a). The purpose of the statute "is not to punish persons who have detained money owed to others in bad faith but, rather, to compensate parties that have been deprived of the use of their money." *Sikorsky Fin. Credit Union, Inc. v. Butts*, 315 Conn. 433, 442-43 (2015). And "a wrongful detention of money, that is, a detention of money without the legal right to do so, is established merely by a favorable judgment on the underlying legal claim, so that the court has discretion to award interest on that judgment, without any additional showing of wrongfulness, upon a finding that such an award is fair and equitable." *DiLieto v. Cnty. Obstetrics & Gynecology Grp., P.C.*, 310 Conn. 38, 48-49 (2013). Whether to award interest under § 37-3a "is principally an equitable question lying within the trial court's discretion." *Sikorsky*, 315 Conn. at 442-43 (stating that the question is "principally an equitable question lying within the trial court's discretion").

Swiss Re argues that it is entitled to "interest as an element of damages," that Defendants "were on notice" at least by the bankruptcy proof of claim, and that a judgment in Swiss Re's favor would establish its entitlement to interest under *DiLieto*. Pl.'s Reply, ECF No. 52, at 10-11 (stating that Swiss Re is "appropriately seeking interest as an element of damages," that Defendants "were on notice," and quoting *DiLieto* for the proposition that "a wrongful detention of money . . . is established merely by a favorable judgment on the underlying legal claim"); Pl.'s Mem. in Supp., ECF No. 44, at 17-18 (requesting "interest based on the statutory rate of ten (10) percent in the amount of $51,004.04" and a "per diem amount of $80.96 thereafter").

The Court agrees.

16

The Defendants respond that in the prior indemnity action the court "refused to award the Surety interest on its attorneys' fees," that the present claim "is strictly for the recovery of attorneys' fees," and that it "was not until April 25, 2025" and "was not until April 29, 2025" that Swiss Re notified Defendants of additional losses and provided copies of the later legal bills. Defs.' Mem. in Opp'n, ECF No. 47, at 19–22; Defs.' L.R. 56(a)(2) Stmt., ECF No. 48 ¶¶ 8–9, 32–34.

Because the amount of recoverable damages cannot be determined as a matter of law on this record, the related issue of any interest on any such damages cannot be determine as a matter of law now either. *Anderson*, 477 U.S. at 248 (stating that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment"); *DiLieto*, 310 Conn. at 48-49 (stating that interest may follow from "a favorable judgment on the underlying legal claim" upon a finding that such an award is "fair and equitable").

Here, Swiss Re's current interest requests are inextricably tied to the disputed fee amount. Pl.'s Mem. in Supp., ECF No. 44, at 17–18 (requesting "an additional per diem amount of $80.96 thereafter" and stating that "[t]he interest amount to date is calculated from the date each cost was incurred"); Pl.'s Reply, ECF No. 52, Ex. A (setting out transaction-by-transaction interest calculations culminating in "TOTAL $80.96 $51,004.04").

This is the case whether the request involves prejudgment or postjudgment interest. *See, e.g., Sikorsky*, 315 Conn. at 442-43 (stating that the interest inquiry is "principally an equitable question lying within the trial court's discretion"); *DiLieto*, 310 Conn. at 48-49 (stating that the court has "discretion to award interest" only "upon a finding that such an award is fair and equitable").

17

Accordingly, Swiss Re's motion for summary judgment will be denied to the extent it seeks prejudgment or postjudgment interest.

## IV. CONCLUSION

For the foregoing reasons, Swiss Re Corporate Solutions America Insurance Corporation's motion for summary judgment, ECF No. 43, is **GRANTED** in part and **DENIED** in part.

The motion is **GRANTED** as to liability under Counts One and Two and **DENIED** as to damages in the principal amount of $247,319.69, as well as to prejudgment and postjudgment interest on any such damages.

In light of the pending motion for entry of default – one if granted, will result in a motion for default judgment – SwissRe is ordered to submit supplemental briefing by **May 1, 2026**, on how the currently disputed issues of damages and prejudgment and postjudgment interest should be resolved in the event that the Defendants no longer defend against this case.

**SO ORDERED** at New Haven, Connecticut, this 28th day of March, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE